UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

DOUG A. TOUCHTON,

                Plaintiff,

v.                                                                 Case No.  5:08-cv-89-Oc-GRJ

MICHAEL J. ASTRUE, Commissioner of Social
Security,

                Defendant.
_____/

## ORDER

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for a period of disability and disability insurance benefits and Supplemental Income.  (Doc. 1.)  The Commissioner has answered (Doc. 11) and both parties have filed briefs outlining their respective positions.  (Docs. 17 & 20.)  For the reasons discussed below, the Court finds that the Commissioner's decision is due to be **AFFIRMED.**

## I.  PROCEDURAL HISTORY

Plaintiff filed applications for a period of disability and disability insurance benefits and Supplemental Income in June 2005, claiming a disability onset date of October 1, 2002.[1]  (R. 107-12, 358-64.)  Plaintiff's applications were denied initially (R. 60-61, 352-54), and upon reconsideration. (R. 56-57, 347-49.)  Thereafter, Plaintiff timely pursued his administrative remedies available before the Commissioner, and requested a hearing before an Administrative Law Judge ("ALJ").  (R. 54.)  The ALJ conducted

---

[1] At the hearing, counsel for Plaintiff advised the Court that Plaintiff had amended the onset date to January 28, 2005.  (R. 367-68.)

Plaintiff's administrative hearing on May 31, 2007. (R. 365-96.)   The ALJ issued a decision unfavorable to Plaintiff on August 23, 2007. (R. 14-28.)  The Appeals Council denied Plaintiff's request for review. (R. 5-7.)  Plaintiff then appealed to this Court. (Doc. 1.)

## II. **STANDARD OF REVIEW**

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[2] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[3]

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[4] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[5] However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient

---

[2] See 42 U.S.C. § 405(g).

[3] See Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); accord, Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

[4] See Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[5] See Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

reasoning to determine that the Commissioner properly applied the law.[6]  The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be expected to last for a continuous period of not less than twelve months.[7]  The impairment must be severe, making Plaintiff unable to do her previous work, or any other substantial gainful activity which exists in the national economy.[8]

The ALJ must follow five steps in evaluating a claim of disability.[9]  First, if a claimant is working at a substantial gainful activity, she is not disabled.[10] Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.[11] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.[12] Fourth, if a claimant's impairments do not prevent her from doing past

---

[6] See Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

[7] See 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.

[8] See 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[9] See 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[10] See 20 C.F.R. § 404.1520(b).

[11] See 20 C.F.R. § 404.1520(c).

[12] See 20 C.F.R. § 404.1520(d).

relevant work, she is not disabled.[13] Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled.[14]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[15] The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[16] The Commissioner may satisfy this burden by pointing to the grids for a conclusive determination that a claimant is disabled or not disabled.[17]

However, the ALJ should not exclusively rely on the grids when the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion.[18] In a situation where both exertional and non-exertional impairments are

---

[13] See 20 C.F.R. § 404.1520(e).

[14] See 20 C.F.R. § 404.1520(f).

[15] See Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987). See Also Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[16] See Doughty at 1278 n.2 ("In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform. In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.") (*internal citations omitted*).

[17] See Walker at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.")

[18] See Phillips v. Barnhart, 357 F. 3d 1232, 1243 (11th Cir. 2004); Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996); Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker at 1003 ("the grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation").

found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[19]

The ALJ may use the grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[20] Such independent evidence may be introduced by a vocational expert's testimony, but this is not the exclusive means of introducing such evidence.[21] Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.[22]

### III. **SUMMARY OF THE RECORD EVIDENCE**

Plaintiff was born on June 7, 1959 and was forty-eight (48) years old when the ALJ issued his decision.  (R. 369.)  Plaintiff completed the eighth grade. (R. 125, 371.) He has owned a lawn service and worked as a cable splicer. (R. 120, 371-72.)  Plaintiff contends that he has been unable to work since October 1, 2002 because of severe back pain due to degenerative discs, arthritis in shoulders, hands and hips and overall flu-like pain due to a prior coral snake bite. (R. 119, 372-73.)

An MRI of the lumbosacral spine on October 20, 2001, showed mild to moderate degenerative disk changes in he mid and lower lumbar spine, with no significant disk protrusion or nerve root impingement identified.  (R. 183.)

---

[19] See Walker at 1003.

[20] See Wolfe at 1077-78.

[21] See id.

[22] See Doughty at 1278 n.2.

From April 5, 2002 to August 6, 2002, Plaintiff was treated by Dantuluri P. Raju, M.D. for chronic back and shoulder pain and unexplained weight loss. (R. 184-88.) Dr. Raju prescribed pain medication and recommended that Plaintiff should go to a pain clinic and stop his lawn job. (R. 184.)

From October 1, 2002 through January 10, 2007, Plaintiff was treated by Shirley A. Ice, M.D. for back pain, shoulder pain, knee pain, arthritis, flu, allergic rhinitis, sinusitis, GERD. (R. 231-88, 313-44.) On November 11, 2002, Dr. Ice discussed "multiple options of ways to change meds to help regain good pain control" and prescribed Oxycontin and Lortab. (R. 267.)  On August 14, 2006, Dr. Ice noted that Plaintiff had been able to stay a lot more active and that he was in good spirits. (R. 326.)  During September, October and November 2006, Dr. Ice noted that Plaintiff was stable on his current medication regimen and recommended an exercise routine such as pilates and/or yoga. (R. 318-324.)

On October 19, 2005, Plaintiff was seen by Lawrence R. Field, D.O. for a consultative evaluation. (R. 203-05.)  Plaintiff reported constant neck, mid and low back pain for the past five years, as well as bilateral shoulder pain, worse on the left and right knee pain.  Dr. Field noted that Plaintiff's current medications included oxycontin, promethazine, paxil and hydrocodone.  Dr. Field's impression was osteoarthritis mostly involving the left shoulder; osteopenia; diffuse back pain as well as other joint arthralgias that are out of proportion to physical findings and radiology examinations; and personal history of melanoma of the left arm.   Dr. Field concluded that Plaintiff had no mental impairments and while he was limited in the utilization of his arms at greater

6

than 90°, such as reaching over his head, his ability to sit, stand, walk, carry, handle objects, hear, speak, see and travel were unaffected.

On October 20, 2005, Plaintiff was seen by Rodney A. Poetter, Ph.D. for a general clinical evaluation with mental status only.  (R. 206-08.)  Plaintiff reported that he cannot work because "I can't physically do it."  He stated that he has lost strength and stamina and suffers from severe chronic pain.  Plaintiff stated that most of his pain is in his back and shoulders and on a zero to ten scale, Plaintiff rated his pain as normally at a level five.  Plaintiff's reported that his medication regimen includes oxycodone, hydrocodone, promethazine and pexeva.  Plaintiff reported that he takes a daily walk, performs all activities of daily living independently and on some days he can do the dishes, laundry, and light housework.   Plaintiff's mental status examination was inconsistent with any major affective or thought disturbance.  Dr. Poetter's diagnostic impression was cannabis abuse, in reported four-year remission; nicotine dependence; and (rule out) learning disorder NOS.

On November 4, 2005, a non-examining state agency physician performed a Physical Residual Functional Capacity Assessment in which he found that Plaintiff could frequently lift and/or carry 10 pounds, occasionally lift and/or carry 20 pounds, stand and/or walk for about 6 hours in an 8-hour workday, sit for about 6 hours in an 8-hour workday and push and/or pull without limitation.  (R. 223-30.)  He further found that Plaintiff could occasionally climb ramp/stairs, balance, stoop, kneel, crouch and crawl but never climb ladder/rope/scaffolds.  He also noted that Plaintiff was limited in his ability to reach in all directions and that he should avoid concentrated exposure to hazards

Amy E. Clunn, M.D. treated Plaintiff on three occasions from June 12, 2006 until December 5, 2006. (R. 297-306.)  Dr. Clunn opined that an EMG performed in June 2006 was "consistent with a likely evolving process of sensorimotor neuropathy, but with this time a definite predilection for the sensory nerves, although there was sparing of the left sural sensory response" (R. 301) and could show a chronic very mild sciatic versus L5 radiculopathy, but this was very mild and lacked positive findings in the paraspinal tissues. (R. 301.)   Dr. Clunn noted that she had not seen the report of the cervical spine MRI but Plaintiff stated that Dr. Ice had the report and said it was normal.  Dr. Clunn recommended Plaintiff follow up with Dr. Ice since there were no significant pathological findings in the MRIs of the cervical and lumbar spine.  (R. 299.)  Moreover, on examination, Dr. Clunn noted that Plaintiff ambulated without assistive device and had the ability to toe and heel walk; had normal alignment and stability of the cervical and lumbar spine; mild cervical paraspinal tenderness to palpations; no scapular winging with abduction or forward flexion; some tenderness over the lumbosacral junction and bilateral S1 joints; forward flexion to 50 degrees and extension to 10 degrees; and upper extremity strength of 5/5.  (R. 297-306.)  On December 5, 2006, (the third and last time Plaintiff was last treated by Dr. Clunn) Plaintiff reported doing "fairly well", that his lower back pain was the worst pain but that it was generally non-radiating, and that his pain was managed with the medications prescribed by Dr. Ice. (R. 297.)

On May 20, 2007, Dr. Ice completed a very brief form entitled "Physical Capacities Evaluation" finding that Plaintiff could lift and carry 5 pounds, sit for 15-20 minutes, stand 15-20 minutes, and walk for 15-20 minutes.  (R. 346.)  Dr. Ice further

8

noted that Plaintiff has severe pain that affects his ability to concentrate and that Plaintiff's mandatory pain management regimen may also affect his concentration.

At the hearing on May 31, 2007, Plaintiff testified that he has constant, stabbing pain in his lower back, neck and shoulders. (R. 375.) Plaintiff testified that he takes Oxycontin, Lortab, muscle relaxers and Paxil for depression. (R. 375-76.) Plaintiff testified that he watches television, that he is able to drive but that his daughter and wife perform all household chores. Plaintiff testified that he can sit for ten to twenty minutes, stand for ten to fifteen minutes, and lift five to ten pounds. Plaintiff testified that his pain level on an average day with medications is 3 or 4 out of 10. (R. 381-82.)

Based on his review of the record, including Plaintiff's testimony and the medical records from several health care providers, the ALJ determined that Plaintiff had degenerative disc disease, arthritis in shoulders, and hands and an affective disorder. (R. 20.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled one of the impairments listed in Appendix 1, Subpart P of Social Security Regulation No. 4. (R. 21-22.)

The ALJ then found that Plaintiff retained the RFC to only carry 10 pounds frequently, and 20 pounds occasionally (from very little, up to 1/3 of an 8-hour workday); stand and/or walk for a total of 6 hours in an 8-hour workday; and sit for a total of 6 hours in an 8-hour workday. (R. 23-4.) The ALJ found that Plaintiff would require a sit/stand option while remaining at the workstation; that he should avoid pushing and pulling motions with his lower extremities but that he could perform pushing and pulling motions with his upper extremities within the aforementioned weight restrictions; and that he was able to perform activities requiring bilateral manual dexterity for both gross

and fine manipulation with handling and reaching. The ALJ found that Plaintiff should avoid hazards in the workspace such as unprotected areas of moving machinery, heights, ramps, ladders, scaffolding, and unprotected areas of holes and pits; could occasionally balance, stoop, crouch, kneel, and crawl but never climb; and is limited to occasional over the head reaching. The ALJ also found that Plaintiff's pain symptoms may affect his ability to concentrate upon complex or detailed tasks but he would remain capable of understanding, remembering, and carrying out simple job instructions.

The ALJ concluded that Plaintiff could not perform his past relevant work, but that he could perform jobs that exist in significant numbers in the national economy. (R. 21.) In reaching this conclusion, the ALJ relied on the testimony of a vocational expert. Accordingly, the ALJ found that Plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ improperly rejected the opinion of Plaintiff's treating physician – Dr. Ice. On May 20, 2007, Dr. Ice completed a very brief form entitled "Physical Capacities Evaluation" finding that Plaintiff could lift and carry 5 pounds, sit for 15-20 minutes, stand 15-20 minutes, and walk for 15-20 minutes. (R. 346.) Dr. Ice further noted that Plaintiff has severe pain that affects his ability to concentrate and that Plaintiff's mandatory pain management regimen may also affect his concentration.

In rejecting Dr. Ice's opinion, the ALJ stated:

> Little weight is assigned to Dr. Ice's opinion as beyond the check marks placed on a form devised by the representative, it is not supported by any adequate explanations of how and why the evidence supports the conclusions and fails to adequately identify objective clinical signs, diagnostic studies, or laboratory findings in support of the conclusions. Indeed, her treatment notes

10

> from October and November 2006 indicate the claimant is stable on his current medication regimen and she recommends that he undergo an exercise routine such as Pilates and/or Yoga. . . Her opinion that the claimant can only sit less than 15 to 20 minutes in an 8-hour day, and stand and/or walk only 30 to 40 minutes in an 8-hour day essentially describes an invalid who is nearly bedridden all day, who is certainly not the claimant [who] maintains a more than active lifestyle including driving, shopping, watching television, read and do limited, light household chores including dishes and laundry. He is able to take care of all of his personal hygiene needs independently. Moreover, there are no tests or findings to support a lifting restriction of 5 pounds; and no range of motion and comprehensive musculoskeletal examination is noted. While it is reasonable to conclude that the claimant should have some pain and or limitations, the evidence as a whole does not substantiate any cause for such debilitating pain, as described by the claimant that would preclude all work activity.

(R. 25.)

It is well-established that substantial or considerable weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless "good cause" is shown to the contrary.[23] If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.[24]

The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly

---

[23] Crawford v. Commissioner of Social Security, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir.1997)) ("We have found 'good cause' to exist where the doctor's opinion was not bolstered by the evidence, or where the evidence supported a contrary finding. We have also found good cause where the doctors' opinions were conclusory or inconsistent with their medical records."). See also Edwards v. Sullivan, 937 F.2d 580, 583-584 (11th Cir. 1991); Sabo v. Commissioner of Social Security, 955 F. Supp. 1456, 1462 (M.D. Fla.1996); 20 C.F.R. § 404.1527(d).

[24] 20 C.F.R. § 404.1527(d)(2).

conclusory.[25] Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.[26]

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record a whole; (5) specialization in the medical issues at issue; and (6) other factors which tend to support or contradict the opinion.[27] However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.[28]

Upon a review of the ALJ's decision, as well as an examination of the medical records at issue, the Court finds that the ALJ properly considered the opinion of Dr. Ice as a treating physician. The ALJ articulated good cause for discounting Dr. Ice's May 20, 2007 assessment regarding Plaintiff's functional limitations.

First, the ALJ correctly explained that Dr. Ice merely placed check marks on a form that is not supported by any adequate explanations of how and why the evidence supports the conclusions and fails to adequately identify objective clinical signs,

---

[25] Edwards, 937 F.2d at 584 (ALJ properly discounted treating physician's report where the physician was unsure of the accuracy of his findings and statements).

[26] Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir.1986); see also Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir.1987).

[27] 20 C.F.R. § 404.1527(d).

[28] Wilson v. Heckler, 734 F.2d 513, 518 (11th Cir.1984); see also 20 C.F.R. § 404.1527(d)(2).

diagnostic studies, or laboratory findings in support of the conclusions. (R. 25.)   An ALJ may reject a treating physician's opinion where it is merely conclusory.[29]

Second, the ALJ noted that despite his opinion that Plaintiff had significant functional limitations, Dr. Ice's treatment notes from September, October and November 2006 showed that Plaintiff was stable on his current medication regimen and Dr. Ice recommended that he undergo an exercise routine such as pilates and/or yoga. These notes are not consistent with Dr. Ice's subsequent opinion regarding Plaintiff's rather severe functional limitations.

Third, the ALJ explained that Dr. Ice's opinion "essentially describes an invalid who is nearly bedridden all day" but that Plaintiff maintains a more than active lifestyle including driving, shopping, watching television, reading, doing limited household chores including dishes and laundry and handling all personal hygiene needs independently. For example, Plaintiff reported to Dr. Poetter that he takes a daily walk, performs all ADL's independently and on some days he can do the dishes, laundry, and light housework.  (R. 207.)  It is well-accepted that an ALJ may reject a treating physician's assessment that is inconsistent with an individual's actual activities.[30]  Finally, the ALJ explained that there are no tests or findings to support a lifting restriction of 5 pounds and no range of motion and comprehensive musculoskeletal examination was noted.

---

[29] See Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991)(a treating physician's opinion regarding an inability to work may be disregarded if it is unsupported by objective medical evidence or is wholly conclusory.)

[30] See e.g., Social Security Ruling 96-2p (http://www.ssa.gov/OP_Home/rulings/di/01/SSR96-02-di-01.html)("For example, a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's actual activities are greater than those provided in the treating source's opinion.

Nevertheless, Plaintiff argues that the ALJ should have given full credit to Dr. Ice's opinions in light of the medical records of Dr. Raju and Dr. Clunn, two of Plaintiff's treating physicians.  Dr. Raju, who saw Plaintiff on three occasions from April 5, 2002 to August 6, 2002, prescribed pain medication and recommended that Plaintiff should go to a pain clinic and stop his lawn job.  (R. 184.) However, Dr. Raju treated Plaintiff almost five years before Dr. Ice's May 20, 2007 assessment and his suggestion that Plaintiff stop performing lawn maintenance (which is heavy exertional work) does not necessarily support Dr. Ice's opinion that Plaintiff has significant functional limitations and can only could lift and carry 5 pounds, sit for 15-20 minutes, stand 15-20 minutes, and walk for 15-20 minutes.

With regard to Dr. Clunn, she treated Plaintiff on three occasions for "chronic low back pain with lumbar spondylosis, facet disease, and degenerative disc change L5-S1; chronic thoracic pain, status-post compression fracture mild and lower thoracic spine; and chronic right hand numbness/neuropathy, secondary to gangrene."[31]  However, her treatment notes do not support the functional limitations identified by Dr. Ice.  As the ALJ noted, Dr. Clunn opined that an EMG performed in June 2006 was "consistent with a likely evolving process of sensorimotor neuropathy, but with this time a definite predilection for the sensory nerves, although there was sparing of the left sural sensory response" (R. 301) and could show a chronic very mild sciatic versus L5 radiculopathy, but this was very mild and lacked positive findings in the paraspinal tissues. (R. 301.) Dr. Clunn noted that she had not seen the report of the cervical spine MRI but Plaintiff

---

[31] See Doc. 17 at 2-3.

14

stated that Dr. Ice had the report and said it was normal. Dr. Clunn recommended Plaintiff follow up with Dr. Ice since there were no significant pathological findings in the MRI's of the cervical and lumbar spine. (R. 299.) Moreover, on examination, Dr. Clunn noted that Plaintiff ambulated without an assistive device and had the ability to toe and heel walk; had normal alignment and stability of the cervical and lumbar spine; mild cervical paraspinal tenderness to palpations; no scapular winging with abduction or forward flexion; some tenderness over the lumbosacral junction and bilateral S1 joints; forward flexion to 50 degrees and extension to 10 degrees; and upper extremity strength of 5/5. (R. 297-306.) Finally, on December 5, 2006, (the third and last time Plaintiff was last treated by Dr. Clunn) Plaintiff reported doing "fairly well", that his lower back pain was the worst pain but that it was generally non-radiating, and that his pain was managed with the medications prescribed by Dr. Ice. (R. 297.)

Accordingly, because the ALJ articulated good cause for discounting Dr. Ice's May 20, 2007 assessment and neither Dr. Raju nor Dr. Clunn's treatment notes support the functional limitations assessed by Dr. Ice, the ALJ properly discounted Dr. Ice's opinions regarding Plaintiff's functional limitations.

The second issue raised by Plaintiff is that the ALJ improperly rejected Plaintiff's credibility with no evidentiary basis for doing so. Without providing any specificity, Plaintiff contends that the medical records of Plaintiff's treating physicians support Plaintiff's pain testimony. If an ALJ decides not to credit a claimant's testimony about subjective complaints, the ALJ must articulate specific and adequate reasons for doing

so, or the record must be obvious as to the credibility finding.[32] While an adequate credibility finding need not cite "particular phrases or formulations [...] broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable a court to conclude that the ALJ considered her medical condition as a whole."[33] A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.[34] However, a lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.[35] If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."[36] As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.[37]

In the instant case, the ALJ apparently applied the Eleventh Circuit's pain standard "threshold"[38] assessment to Plaintiff's subjective complaints by noting the

---

[32] Foote v. Chater, 67 F.3d 1553, 1561-62 (11th Cir. 1995); Jones v. Department of Health and Human Servs., 941 F.2d 1529, 1532 (11th Cir. 1991) (finding that articulated reasons must be based on substantial evidence).

[33] Foote at 1562-1563.

[34] Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986).

[35] Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).

[36] Foote, 67 F.3d at 1562 (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983) (holding that although no explicit finding as to credibility is required, the implication must be obvious to the reviewing court).

[37] Id. at 1561-62; Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

[38] Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992). .

Plaintiff's degenerative disc disease, arthritis in shoulders, and hands and affective disorder. While the ALJ did not cite the exact language of the standard, he did state that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (R. 24.) This language, a paraphrase of the pain standard, along with the supporting findings, shows that the ALJ applied the pain standard. Moreover, the ALJ cited 20 C.F.R. §§ 404.1529, which contains the same language regarding subjective testimony that the Eleventh Circuit interpreted when initially establishing the pain standard.[39]

In applying the pain standard, the ALJ found that Plaintiff met the initial burden of showing underlying medical conditions, degenerative disc disease, arthritis in shoulders, and hands and affective disorder that could reasonably be expected to produce the alleged symptoms but that the Plaintiff's statements concerning the "intensity, persistence and limiting effects of these symptoms are not entirely credible." (R. 19.) In support of this finding, as discussed above, the ALJ properly accorded little weight to Dr. Ice's opinion regarding Plaintiff's functional limitations. Additionally, the ALJ pointed to several inconsistencies that detract from the Plaintiff's credibility. While Plaintiff appeared at the hearing with a very pronounced limp and using a cane, only ten days before the hearing, Dr. Ice noted on the Physical Capacities Evaluation (R. 346) that Plaintiff does not use a cane to ambulate. Moreover, none of Plaintiff's treating

---

[39] See Wilson, 284 F.3d at 1226.

physicians ever noted that Plaintiff had a limp or that he used an assistive device. The ALJ also noted that on October 19, 2005, Dr. Field stated that Plaintiff's pain complaints were out of proportion to the physical findings.  (R. 203-05.)  Dr. Field further found that while Plaintiff was limited in the utilization of his arms at greater than 90° (such as reaching over his head), his ability to sit, stand, walk, carry, handle objects, hear, speak, see and travel were unaffected.   Additionally, on December 5, 2006, Plaintiff reported to Dr. Clunn that he was doing "fairly well" and that the pain medication regimen prescribed by Dr. Ice managed his pain symptoms.  Dr. Clunn noted that there were no significant pathological findings in the lumbar spine MRI and Plaintiff reported that the cervical MRI was normal.   Accordingly, there is substantial evidence to support the ALJ's decision to discredit Plaintiff's testimony regarding limitations.

The third issue raised by Plaintiff is that the ALJ's hypothetical was flawed because it failed to include Dr. Ice's opinions and Plaintiff's testimony regarding subjective pain.   For the reasons discussed above, the ALJ properly discounted Dr. Ice's opinions and properly rejected Plaintiff's testimony regarding the limitations from Plaintiff's subjective pain and, therefore, the ALJ was not required to include  those limitations in the hypothetical. Accordingly, there was no error in the hypothetical posed to the VE.

18

## V. **CONCLUSION**

Based on the foregoing, the Commissioner's decision is due to be **AFFIRMED.**

The Clerk is directed to enter judgment in favor of the Commissioner and close the file.

**IT IS SO ORDERED.**

**DONE AND ORDERED** in Ocala, Florida, on November 7, 2008.

*[signature]*
GARY R. JONES
United States Magistrate Judge

Copies to:
    All Counsel

19